Pauline BROWN and Elizabeth Brooks, on behalf of themselves and all other class members similarly situated, Plaintiffs,

v.

SCI FUNERAL SERVICES OF FLORIDA, INC., a Florida corporation doing business as "Memorial Plan Cemeteries and Funeral Homes" and "Memorial Plan," Defendant.

No. 01–4370–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 15, 2003.

Manuel Antonio Garcia–Linares, Richman, Greer, Weil, Brumbaugh, Mirabito & Christensen, Miami, FL, Gerald F. Richman, Richman, Greer, Weil, Brumbaugh, Mirabito & Christensen, West Palm Beach, FL, Robert William Murphy, Fort Lauderdale, FL, for Plaintiffs.

Ted Christopher Craig, Jeffrey David Marcus, Hunton & Williams, Miami, FL, for Defendant.

## *ORDER*

GRAHAM, District Judge.

**THIS CAUSE** comes before the Court upon Plaintiffs' Motion for Class Certification (D.E.53).

**THE COURT** has considered the motion, the pertinent portions of the record, and is otherwise duly advised in the premises.

## I. *BACKGROUND*

As set forth in the Second Amended Complaint, the proposed Class Representatives each executed a financed, pre-need Retail Installment Sales Contract ("RISC") with Defendant, SCI FUNERAL SERVICES OF FLORIDA, INC. ("SCI"), to finance their purchase of Funeral Merchandise.[1] The Complaint alleges that SCI failed to comply with federal and Florida laws requiring certain disclosures in the RISC. Specifically, Plaintiffs claim that SCI violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), by failing to make all "material" disclosures, including disclosures regarding the finance charge, the amount financed, the annual percentage rate, and the estimates, by failing to more conspicuously disclose the "finance charge" and "annual percentage rate", and by failing to deliver a copy of all disclosures prior to consummation of the transaction. Additionally, Plaintiffs maintain that SCI violated the Florida Retail Installment Sales Act ("FRISA"), by failing to disclose in the RISC the required language in § 520.34(1)(b), Fla. Stat., by failing to comply with TILA requirements-a violation of § 520.34(2), Fla. Stat., and by charging a processing fee of $50 which Plaintiffs claim exceeds the $10.00 processing fee limitation in § 520.34(14) of the Florida Statutes.

## II. *STANDARD OF REVIEW*

It is well-established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way. *See, e.g., Kirkpatrick v. Bradford & Co.* 827 F.2d 718, 722 (11th Cir.1987) (class action certified for securities and common law fraud claims); *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir.1983)(same). Federal Rule of Civil Procedure 23 sets forth the requirements for obtaining class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition to the requirements of Rule 23(a), class certification is appropriate if any one of the subsections of Rule 23(b) are satisfied. The pertinent provision in this case, Rule 23(b)(3), requires that the court find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b).

## III. *DISCUSSION*

Plaintiffs maintain that the requirements of Rule 23 are satisfied in this case, and that

---

1. Funeral Merchandise includes, but is not limited to, a burial casket, burial site, and/or interment services.

Plaintiffs' claims are based on SCI's uniform behavior in failing to make and provide a copy of the required disclosures pursuant to Florida and federal law, and in uniformly failing to comply with the statutory processing fee limitation.

Although Defendants vigorously oppose class certification, Defendants do not dispute that Plaintiffs have satisfied the requirement of numerosity and adequacy of the class representatives and class counsel. Rather, Defendants argue that Plaintiffs cannot satisfy the typicality requirements of Rule 23(a), or the Rule 23(b)(3) requirement that common questions of law and fact predominate over individualized questions, and further argue that Plaintiffs have failed to articulate a workable class definition.

### A. Whether the Numerosity Requirement is Satisfied

■ Plaintiffs believe, and Defendants do not dispute, that there may be up to 9,000 class members. Based on the parties estimates, the Court agrees and finds that the putative class is so numerous that joinder of all members of the class is impracticable. Courts have noted that this requirement—"numerosity"—is more accurately described as an "impracticability of joinder" requirement. *See Miles v. America Online, Inc.*, 202 F.R.D. 297 (M.D.Fla.2001); *Walco*, 168 F.R.D. at 324. The difficulty or inconvenience of joining all of these class members makes class litigation desirable. *Singer*, 185 F.R.D. at 687; *America Online*, 202 F.R.D. at 303 (proposed class of 4,700 subscribers satisfied requirement); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690 (S.D.Fla.1992) (500 class members sufficient); *Powers v. Stuart–James Co., Inc.*, 707 F.Supp. 499, 501–502 (M.D.Fla.1989) (500 investor class members).

### B. Whether There are Questions Of Law and Fact Common to the Class

■ Under Rule 23(a)(2), the Court must find the existence of questions of law or fact that are common to all class members before the matter may be certified as a class action. No qualitative or quantitative test will determine commonality; it is only necessary to find at least one issue common to all class

members. *Pottinger v. City of Miami*, 720 F.Supp. 955, 958 (S.D.Fla.1989); *Walco Investments v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla.1996); *Singer*, 185 F.R.D. at 687. Moreover, the Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality. *Broin*, 641 So.2d at 890; *CV Reit*, 144 F.R.D. at 696; *In re Amerifirst Securities Litigation*, 139 F.R.D. 423 (S.D.Fla.1991); *Pottinger*, 720 F.Supp. at 958.

Plaintiffs contend that SCI's conduct violated the rights of all class members in the same way. Each putative class member executed a pre-printed form RISC with SCI to finance the purchase of Funeral Merchandise. Plaintiffs allege SCI failed to make the required statutory disclosures as provided in FRISA and TILA. Further, the Complaint alleges that SCI failed to deliver a copy of all disclosures prior to consummation of the transaction and failed to comply with the $10 processing fee limitation set forth in the FRISA. Accordingly, Plaintiffs contend, and the Court agrees, that SCI's common course of conduct similarly affected and damaged each class member, such that the "commonality" requirement of Rule 23(a)(2) is satisfied in this case.

### C. Whether Plaintiffs' Claims are Typical of the Claims of Class Members

■ Plaintiffs must also satisfy the requirement of "typicality" set forth in Rule 23(a), which provides that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). The Eleventh Circuit has explained that typicality requires the existence of:

a nexus between the class representative's claims or defenses and the common questions of law or fact that unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a

class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984), *cert. den.,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985). The primary concern is whether the "named representatives' claims have the same essential characteristics as the claims of the class at large." *CV Reit,* 144 F.R.D. at 697; *Pottinger,* 720 F.Supp. at 959. "Typicality" is satisfied when the named party's claim is derived from the same course of conduct from which the claims of the class members evolved and are "based on the same legal or remedial theory". *See Singer,* 185 F.R.D. at 689; *CV Reit,* 144 F.R.D. at 697. Even if each class member has not been affected in exactly the same way by defendant's conduct, such factual distinctions between the claims of the Class Representative and the class members will not necessarily defeat a finding of typicality. *Appleyard v. Wallace,* 754 F.2d 955, 963 (11th Cir.1985); *Singer,* 185 F.R.D. at 689; *Broin,* 641 So.2d at 892; *CV Reit,* 144 F.R.D. at 697; *Amerifirst,* 139 F.R.D. at 428. Differences in each class member's claim for damages do not preclude class certification. *Broin,* 641 So.2d at 892.

Here, the claims of the proposed Class Representatives are not factually distinguishable from the claims of the class members. Each member's claim arises from the same course of conduct engaged in by SCI. Each claim is also based on the same legal theories of federal and Florida statutory law violations. The claims of the Class Representatives are therefore typical of the claims of the class members.

Finally, the "typicality of claims" requirement of Rule 23(a)(3) and the "adequacy of representation" requirement of Rule 23(a)(4) (discussed below) are related. Both are intended to prevent the representatives from having interests that conflict with those of the class members they purport to represent. *Walco,* 168 F.R.D. at 326; *Pottinger,* 720 F.Supp. at 959. Here, the Court finds that no such conflicts are present between the Class Representatives' interests and those of the class. Thus, the requirements of Federal Rule of Civil Procedure 23(a)(3) are satisfied.

**D. Whether Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Class**

Rule 23(a)(4) requires that the representatives will fairly and adequately protect class interests:

> Adequate representation involve "questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation ... The adequacy requirement serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."

*America Online,* 202 F.R.D. at 303; *See also Pottinger v. City of Miami,* 720 F.Supp. 955, 959 (S.D.Fla.1989). The proposed Class Representatives must meet a two-part test: First, there must be a commonality of interest between the Representatives and the class, and, second, there must be qualified attorneys representing the class, with vigorous participation by the Class Representatives. *Broin,* 641 So.2d at 890, 892; *Walco,* 168 F.R.D. at 327. Adequacy of representation is presumed unless there is evidence to the contrary. *Access Now,* 2000 WL 1809979 at *4.

Defendants do not dispute that this requirement is satisfied in this case. Based on a review of the parties' submissions, the Court finds that there is no conflict of interest between the representatives and the class as a whole, and that the named class representatives have the ability to prosecute the action vigorously through qualified counsel. *Carter v. West Publishing Co.,* 1999 WL 994997 (11th Cir.1999).

**E. Whether Class Certification is Appropriate Under Federal Rule of Civil Procedure 23(b).**

In addition to satisfying the four prerequisites to class representation discussed above, Rule 23(b) must be satisfied for a class action to be maintained. Subsection (b)

provides three alternative types of class actions, two of which are alleged to apply in this case, and only one of which the Court deems necessary to address, namely Rule 23(b)(3).

As the Eleventh Circuit instructed in *Rutstein v. Avis Rent–A–Car*:

> That common questions of law or fact predominate over individualized questions means that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."

*Rutstein*, 211 F.3d 1228, 1233 (11th Cir.2000) (citations omitted).

In deciding whether common questions predominate under Rule 23(b)(3), courts generally focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis. *See, e.g., Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). Not all questions of law or fact need be in common. *Walco*, 168 F.R.D. at 334. The existence of a few individual questions will not negate the predominance of common issues. *Id.* Unanimity among class members is not required; rather, Rule 23(b)(3) only requires that the common issues predominate over the individual issues. *Id.*

Defendant argues that individual issues predominate over common question of law and fact. The Defendant first argues that class certification is inappropriate because to assert a prima facie case under 15 U.S.C. § 1638(b), a particularized showing as to each individual must be made with regard to physical delivery of the RISC to the class members prior to consummation of the transaction. However, the Court finds that any required inquiry into the timing of disclosures does not prevent certification. The mere fact that class members will have to file a claim form or affidavit stating whether and when they were provided with the pertinent disclosures does not preclude the application of class treatment.

Defendant also argues that TILA requires each class member to establish detrimental reliance because Plaintiffs seek actual damages and, thus, the individual issues predominate over any common issues. For their part, Plaintiffs agree that individual evidence of detrimental reliance is required if a plaintiff is seeking to establish entitlement to actual damages. *Turner v. Beneficial Corporation*, 242 F.3d 1023 (11th Cir.2001). However, Plaintiffs concede that they will not assert a claim for actual damages under TILA, but rather only intend to pursue statutory damages. The *Turner* decision clearly holds that reliance is not a necessary element for a statutory damage claim. *Id.* at 1028.

With respect to claims for statutory damages, Defendant maintains that Plaintiffs are not entitled to statutory damages for violation of § 1632 and § 1638(b). The Defendant relies on a Seventh Circuit decision in *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir.2000). The *Brown* court, interpreting § 1640, held that unless a plaintiff makes a claim for damages pursuant one of the statute's enumerated provisions, the plaintiff cannot recover statutory damages. *Id.* at 991 (stating that the word "only" in § 1640 confines statutory damages to a closed list, encompassing § 1638(a)(3), (4), (5), (6), or (9) violations).

The Court notes that there is a split among the district courts regarding the *Brown* court's interpretation of the pertinent statutory language. *Compare Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F.Supp.2d 878 (W.D.Mich.2001) (allowing for statutory damages for a § 1638(b) claim), and *Walters v. First State Bank*, 134 F.Supp.2d 778 (W.D.Va.2001) (awarding statutory damages in conformity with *Lozada* for a § 1638(b) TILA violation), with *Kilbourn v. Candy Ford–Mercury, Inc.*, 209 F.R.D. 121, 126–27 (W.D.Mich.2002) (granting summary judgment in favor of Defendant on claim for statutory damages based on alleged violation of § 1638(b).) No court in the Eleventh Circuit has addressed the issue.

At this juncture, the Court is not persuaded that the provision in § 1640 limiting statutory damages for violations of disclosure requirements applies to violations of timing and form requirements, such that Plaintiffs are precluded from asserting a class claim for statutory damages based on § 1632 or

§ 1638(b). Although it would appear that the requirement that a disclosure be made in a certain manner and at a certain time does not fall within the definition of a "disclosure" as referenced in the § 1640 limitation, the parties may, of course, more fully address the issue in the context of a dispositive motion, if deemed appropriate.

In addition, the Court notes that for purposes of class certification, Plaintiffs have alleged claims for violations of § 1638(a)(2), (3) and (4), which fall squarely within the enumerated provisions in § 1640 for which statutory damages are expressly permitted. In this regard, Defendant argues that Plaintiffs' theory of recovery is fatally flawed, because the fees at issue here were not, Defendant suggests, imposed as an incident to the extension of credit, but were rather imposed on all contracts alike, regardless of whether they are financed or paid in full. Although courts may reach the merits of a claim in the context of a class certification motion, the Court finds that this argument, which appears to turn on fact issues, is premature, and may be more appropriately considered after discovery is complete. Therefore, the Court finds that Plaintiffs have properly plead the predominance requirement of § 23(b)(3).

Defendant also argues that class certification should be defeated by virtue of the counterclaims it intends to pursue against many of the class members. Defendant has alleged a counterclaim against the named Class representatives for the failure to make payment on their financed, pre-need cemetery contracts, and indicates that it possesses claims for breach of contract due to nonpayment with regard to 3,350 of the contracts of the form executed by Plaintiffs.

However, the Court finds that the existence of counterclaims for debt collection will not prevent class certification. *See Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir.1978). Indeed, if the Court, following certification, concludes that the counterclaims make the class unmanageable, the Court has the continuing authority under Rule 23 to issue a supplemental order excluding counter-claim defendants from the plaintiff class or separating and severing the class into two different classes.

Based on the foregoing, the Court concludes that class certification is appropriate.

### F. *Whether a Workable, Objective Class Definition Exists*

Plaintiffs ask the Court to certify a class of persons that 1) entered into a retail installment sales contract with Memorial Plan, that 2) were "overcharged a processing fee" in violation of RISA, 3) were given inadequate financial disclosures in violation of TILA, and 4) were not provided with a copy of all disclosures prior to consummation of the credit transaction. As the starting point for their proposed definition, Plaintiffs ask the Court to include in the class "all persons who . . . executed a RISC to finance the purchase of Funeral Merchandise with" Memorial Plan.

The Court agrees with Defendant that as worded, the definition might encompass financed sales contracts other than the form contract used in Plaintiffs' transaction and at issue in this litigation. In their pleadings, Plaintiffs necessarily limit their claims to the form of the "RISC" they signed. Accordingly, a feasible class includes persons who signed the financed, pre-need cemetery contracts like that executed by Plaintiffs.

Further, the Defendants note that it is well-settled that the class period for a class action certified under Rule 23 is limited by the governing statutes of limitations. *See Upshaw v. Georgia (GA) Catalog Sales, Inc.*, 206 F.R.D. 694, 696 n. 2 (M.D.Ga.2002). Plaintiffs filed their original complaint on September 25, 2001. The statute of limitations governing Plaintiffs' TILA claims is one (1) year. *See* 15 U.S.C. § 1640(e) (2002). Accordingly, for class-wide TILA claims, the class period would be September 26, 2000 through September 25, 2001. The statute of limitations governing Plaintiffs' RISA claims is four years. *See* Fla. Stat. § 95.11(f) (2002). Thus, for class-wide RISA claims, the class period would be September 26, 1997 through September 25, 2001.

The Defendants also argue, and the Court agrees, that as proposed by Plaintiffs, deter-

mination of class members would rest on premature factual findings and legal determinations. For instance, the Court would be required to determine if customers were "overcharged a processing fee in the violation of" RISA and "given inadequate disclosures" under TILA. However, given that the issues at the crux of this litigation are the contents of the form contract executed by customers of Memorial Plan, including Plaintiffs, and the manner in which Memorial Plan completed and presented the contract to its customers, an appropriate class definition would reach persons within the class period that signed financed sales contracts like that executed by Plaintiffs.

In view of the two distinct statutes of limitations governing Plaintiffs' claims, the only feasible approach is to define one class with respect to the TILA claims and a second class with respect to the RISA claims. An appropriate class in connection with the federal TILA claim could be defined as all persons that executed financed, pre-need cemetery contracts with Memorial Plan of the form executed by Plaintiffs from October 26, 2000 through October 25, 2001. With respect to Plaintiffs' claims under 15 U.S.C. § 1638(b), a subclass may be defined to include all such persons who were not given a copy of the contract prior to its execution. In connection with the FRISA claim, an appropriate class could be defined as all persons that executed financed, pre-need cemetery contracts with Memorial Plan of the form executed by Plaintiffs from October 26, 1997 through October 25, 2001. With respect to each class, the Court retains the authority to sever each class into a subclass of class members against whom counterclaims have been asserted.

Therefore, the Court finds that a workable class definition exists covering those persons within the appropriate class period that signed finances sales contracts like that executed by Plaintiffs. The class, as defined below, is sufficiently identifiable because it will be administratively feasible for the court to determine whether a particular individual is a class member. *Access Now, Inc. v. AHM CGH, Inc.*, 2000 WL 1809979 (S.D.Fla.2000). *See also Neumont v. Monroe County, Fla.*,

198 F.R.D. 554 (S.D.Fla.2000); *Singer v. AT & T Corp.*, 185 F.R.D. 681 (S.D.Fla.1998); *Broin v. Philip Morris Companies, Inc.*, 641 So.2d 888, 889 (Fla. 3d DCA 1994).

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification (D.E.53) is **GRANTED.** Pursuant to Federal Rule of Civil Procedure 23(b)(3), two classes are hereby certified, defined as follows:

1. All persons that executed financed, preneed cemetery contracts with SCI Funeral Services of Florida, Inc., d/b/a "Memorial Plan Cemeteries and Funeral Homes" or "Memorial Plan" of the form executed by Plaintiffs from October 26, 2000 through October 25, 2001. Within this class, a sub-class shall include all such persons who were not given a copy of the contract prior to or at the time of its execution.

2. All persons that executed financed, preneed cemetery contracts with SCI Funeral Services of Florida, Inc., d/b/a "Memorial Plan Cemeteries and Funeral Homes" or "Memorial Plan" of the form executed by Plaintiffs from October 26, 1997 through October 25, 2001. It is further

**ORDERED AND ADJUDGED** that within ten (10) days of the date of this Order, the parties are directed to file a Joint Status Report identifying all relevant procedural and scheduling issues, including issues relating to class notice, which must be addressed in view of the Court's certification above. It is further

**ORDERED AND ADJUDGED** that this case is set for a status conference on **Wednesday, February 5, 2003**, at **3:30 p.m.** before the undersigned, at the United States District Court, United States District Courthouse, Federal Justice Building, 99 N.E. 4th Street, Eleventh Floor, Courtroom 1, Miami, Florida.