**Ramsey AGAN, Grace Agan, and Sherry Ann Spies, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**KATZMAN & KORR, P.A., Leigh C. Katzman, and Ferren L. Korr, Defendants.**

No. 03–62145–CIV.

United States District Court, S.D. Florida.

July 16, 2004.

F. Blane Carneal, Fort Lauderdale, FL, O. Randolph Bragg, Chicago, IL, for plaintiff.

James M. Kaplan, Miami, FL, for defendant.

### ORDER GRANTING MOTION FOR CLASS CERTIFICATION

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Plaintiffs' Motion for Class Certification [DE–38]. The Court has carefully considered the Motion, Plaintiffs' Memorandum in Support of their Motion [DE–39], Defendants' Memorandum in Opposition to Plaintiffs' Motion [DE–60], Plaintiffs' Reply [DE–65] and is otherwise fully advised.

### I. BACKGROUND

Plaintiffs are the owners of condominiums in Broward County, Florida. Plaintiffs Ramsey and Grace Agan jointly own a unit in Plaza East Condominiums, and Plaintiff Sherry Spies owns a unit in Karanda Village II. (Compl. Ex. B, F.) The Condominium Associations of Plaintiffs' respective units sought to obtain assessments from Plaintiffs. (Compl. ¶ 12.) When Plaintiffs allegedly did not pay the assessments, Defendants, on behalf of the Condominium Associations, recorded claims of lien against Plaintiffs' units. (Compl. Ex. B, G.) Defendants notified Plaintiffs of the claims of lien via letter and requested payment of the debts and related attorneys' costs and fees. (Compl. ¶ Ex. A, B, E, F.) Defendants refer to these form letters as intent to foreclose letters.

Plaintiffs allege that Defendants overcharged consumers for attorneys' fees and costs, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Specifically, Plaintiffs allege that Defendants, by inflating their attorneys' fees and costs, violated the FDCPA by falsely representing "the character, amount or legal status" of debts, threatening to take an action that "cannot legally be taken or that is not intended to be taken" and using "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." *See* 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10). Plaintiffs also allege that Defendants attempted to collect attorneys' fees and costs that are not authorized by the agreements creating the debt and that are not permitted by law. *See* 15 U.S.C. § 1692f(1). Finally, Plaintiffs allege that Defendants violated the Florida Consumer Collection Practices Act ("FCCPA") by failing to include due dates on the claims of lien and by attempting to collect debts that are not legitimate. *See* Fla. Stat. §§ 718.116(5)(b), 559.72(9).

Plaintiffs now request that this Court certify their case as a class action on behalf of (i) all persons to whom letters were sent (ii) in an attempt to collect a debt incurred for residential property assessment (iii) which were not returned undelivered by the U.S. Post Office. Plaintiffs request that the Court certify two subclasses: Subclass A, the Fair Debt Collection Practices Act Class, consisting of all persons to whom Defendants sent letters or claims of lien, similar to the ones received by Plaintiffs, during the one year period prior to December 2, 2003, and Subclass B, the Florida Consumer Collec-

tions Practices Act Class, consisting of all persons to whom Defendants sent letters or claims of lien, similar to the ones received by Plaintiffs, during the two year period prior to December 2, 2003.

## II. DISCUSSION

■■■ Parties seeking class action certification must satisfy the four requirements stated in Fed.R.Civ.P. 23(a), commonly referred to as "numerosity, commonality, typicality and adequacy of representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "[E]ach proposed subclass must independently satisfy class action criteria." *Jones v. Roy*, 202 F.R.D. 658, 662 (M.D.Ala.2001). Parties moving for class certification bear the burden of establishing each element of Rule 23(a). *London v. Wal–Mart Stores*, 340 F.3d 1246, 1253 (11th Cir.2003). If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a class action. *Jones*, 202 F.R.D. at 662. Specifically, the four requirements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b). *Amchem Prods. Inc.*, 521 U.S. at 614, 117 S.Ct. 2231.

■■■ In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992). Although a district court is not to determine

the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 1570 n. 11. A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984).

### A. *Rule 23(a) Requirements*

#### 1. Numerosity

■■■ "The Court is given discretion to make assumptions when determining the numerosity of a class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D.Fla.2000) (citing *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir.1983)). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Id.* The focus of the numerosity inquiry is not whether the number of proposed class members are "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D.Fla.1986). While the size of the proposed class is highly relevant to the court's determination of numerosity, courts must also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 685 (S.D.Fla.2004) (citing *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D.Fla. 1996)).

■■■ Defendants stated, in recent response to Plaintiffs' discovery request, that Defendants billed for the preparation of 1,176 intent to foreclose letters from December 3, 2001 through June 15, 2003.[1] (Bragg Decl.

---

**1.** This estimate represents the most recent estimate submitted to the Court by either party. Defendants' counsel presented the estimate to Plaintiffs in a letter dated June 21, 2004, which

Plaintiffs filed with the Court on July 7, 2004. (Bragg Decl. July 7, 2004 Ex. 1.) The letter was a response to Plaintiffs' interrogatories and an agreement reached by parties at a hearing re-

July 6, 2004 Ex. 1.) This number does not represent the exact number of all intent to foreclose letters sent by Defendants, only the number of letters that Defendants drafted. (Bragg Decl. July 6, 2004 Ex. 1.) It also does not account for the number of letters returned by the U.S. Postal Service. (Bragg Decl. July 6, 2004 Ex. 1.)

In addition, Plaintiffs' attorney stated that he personally reviewed over 150 claims of lien recorded by Defendants in Broward County from December 1, 2001 to December 4, 2002. (Carneal Decl. Apr. 13, 2004 ¶ 4). Plaintiffs' attorney also stated that he reviewed over 100 suits filed by Defendants against unit owners from December 1, 2001 to the present and over 150 claims of lien recorded by Defendants from December 1, 2001 to the present. (Carneal Decl. May 24, 2004 ¶ 1.)

Defendants argue that the numerosity element is not satisfied because all of the unnamed class members live in the same county, eliminating many of the difficulties encountered with joinder. While geographic diversity is one factor for the Court to consider, the Court finds that joinder is impractical in this case, given the large number of potential class members.

Based on the evidence submitted, the Court finds that the numerosity element is satisfied. Plaintiffs have provided a reasonable estimate of the proposed class, and joinder of such a large number of proposed class members is impractical.

### 2. Commonality

■ Commonality requires at least one issue common to all members of the class, but does not require that all factual and legal questions be common. *In re Terazosin,* 220 F.R.D. at 685; *Fuller,* 197 F.R.D. at 700. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course

of conduct that affects all class members." *In re Terazosin,* 220 F.R.D. at 687. Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter. *Fuller,* 197 F.R.D. at 700 (stating that the commonality element is met where the common legal question is whether the letter violates the FDCPA and FCCPA); *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) (stating that mailing proposed class members allegedly illegal form letters or documents constitutes standardized behavior in satisfaction of the commonality requirement); *Swanson v. Mid Am. Inc.,* 186 F.R.D. 665, 668 (M.D.Fla.1999) (stating that "[t]o establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter"); *Macarz v. Transworld Sys., Inc.,* 193 F.R.D. 46, 50 (D.Conn.2000) (stating that the "defining common characteristic of class members here is that they all were sent the same or similar letters").

■ Plaintiffs assert that the commonality element is satisfied because each class member received similar form letters and claims of lien, presenting the common legal issue of whether the form letters and claims of lien violate the FDCPA and the FCCPA.

Defendants argue that a change in their practice of sending form letters severs the commonality element among class members. As of January 1, 2003, Defendants attached an individualized account ledger to the claims of lien recorded. (Heinish Decl. May 14, 2004 ¶ 5.) Defendants argue that this action of attaching a list of account transactions, i.e. dates of debts incurred and payments made by the unit owner, to the claims of lien resulted in individualized letters and claims of lien. Thus, Defendants argue, those class members receiving the attached ledger do not share a common bond with the class

garding discovery. *See* Order on a Motion to Compel and Cross–Motion for Protective Order entered by Magistrate Judge Torres on June 9, 2004 [DE–73]. Defendants previously estimated that there were between fifteen and twenty potential class members in their Motion in Opposition to Class Certification filed on May 14, 2004. This estimate was based on Mr. Heinish's initial review of Katzman & Korr billing records,

which indicated that there were thirty-nine claims of lien prepared in December 2002. (Heinish Decl. May 14, 2004 ¶ 10.) Because Defendants' previous estimates appear inconsistent and Defendants' recent estimates were likely produced after a more thorough review of Defendants' billing records, the Court considers the most recent estimate to be a better indication of the number of potential class members.

members who did not receive the attached ledger.

However, the Court finds that the simple act of attaching an individualized list of account transactions does not sever the common bond permeating throughout the class members. All of the proposed class members received the same form letter and claim of lien, and all of the proposed class members have the same legal question of whether the form letter and claim of lien violated the FDCPA and FCCPA. The attachment of an account ledger does not change either the factual or legal questions presented by the class members.

Further, commonality is not destroyed because the amount of debt on the form letter varies between class members when all class members receive similar form letters. *Keele*, 149 F.3d at 591 (finding that plaintiff received a form letter demanding the sum of $117.76); *Swanson*, 186 F.R.D. at 667 (finding that plaintiff was sent a form notice stating that he owed $235.50). Similarly, commonality is not destroyed because the list of account transactions varies between class members when all class members receive similar form letters and claims of lien.

Moreover, Plaintiffs have provided evidence that Defendants did not attach a ledger to all claims of lien recorded after January 1, 2003. (Carneal Decl. Jun. 8, 2004 ¶ 4.) For the foregoing reasons, the Court finds that Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

■■■ "The main principle behind typicality is that the plaintiff will advance the interests of the class members by advancing his or her own interests." *In re Terazosin*, 220 F.R.D. at 687. The typicality requirement is satisfied if "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Kornberg*, 741 F.2d at 1337. If parties seeking class certification can establish that the "same unlawful

conduct was directed at or affected both the class representatives and the class itself, then the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *In re Terazosin*, 220 F.R.D. at 686. To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *Id.* "The primary concern is whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D.Fla.2003).

"The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a "variation of the same collection letter." *Fuller*, 197 F.R.D. at 700.

### a. Subclass A—The FDCPA Class

■■■ Plaintiffs assert that the typicality requirement is satisfied because all class members received the same letter in violation of the FDCPA. Mr. Heinish argues that a change in the law firm's billing practices severs the typicality element.[2] As of January 1, 2003, Defendants charged a flat rate of $320.00 for all services performed with regard to drafting and recording a claim of lien, drafting a letter of intent to foreclose, and drafting and recording a satisfaction of lien, if necessary. (Heinish Decl. May 14, 2004 ¶ 4.) Prior to January 1, 2003, Defendants charged an hourly rate for these services. Therefore, Mr. Heinish argues, the fees reflected in Katzman & Korr's billing statements, presumably sent to their clients, now match the attorneys' fees stated in the form letter and claim of lien.

2. Defendants' argument regarding the change in billing practices is presented in the Declaration of Mr. Heinish, an attorney of Defendant Katzman & Korr P.A. who is not counsel of record in this case. (Heinish Decl. May 14, 2004 ¶ 4.) The Court notes that the argument is not mentioned in Defendants' Motion, but Mr. Heinish's Declaration is attached as Exhibit A to Defendants' Motion.

Plaintiffs argue that the change in Defendants' billing practices actually supports their argument that Defendants are overcharging class members. Plaintiffs contend that some class members are automatically being overcharged because those class members will be charged for drafting a satisfaction of the lien when their case does not require this service. Thus, Plaintiffs contend that Defendants are still engaging in the same unlawful conduct of overcharging for their services. In addition, Plaintiffs contend that the billing method does not affect their claims that Defendants inflated their attorneys' costs.

The Court finds that the variation in billing methods is not so severe as to place the interests of those class members who received flat fees in serious jeopardy. The named Plaintiffs have the same essential characteristics of the class members who were charged a flat rate. All class members received a similar form letter that attempted to collect a debt, attorneys' fees and costs. All class members allegedly suffered the same potential wrong of being overcharged by Defendants; the fact that Defendants allegedly committed the wrong by adding more hours to the bill or by inflating their flat rate does not destroy the class members' claim of overcharging for attorneys' fees. Further, the factual variation is irrelevant to Plaintiffs' claim that Defendants are attempting to recover attorneys' fees and costs when not authorized by the agreements creating the debt or by law. Therefore, Plaintiffs have satisfied the typicality requirement for Subclass A.

b. Subclass B—The FCCPA Subclass

█ Plaintiffs assert that Defendants violated the FCCPA by attempting to collect debts that are not legitimate and by failing to include a due date on the claims of lien recorded. Plaintiffs contend that the typicality requirement is satisfied because all class members were sent the same letter in violation of the FCCPA.

Defendants argue that the Plaintiffs' claims are not typical of the class members who own homes rather than condominiums. Defendants contend that Florida law does not require due dates on claims of lien recorded against homeowners, and therefore Plaintiffs' claim that Defendants failed to include due dates on claims of lien in violation of Florida law is only applicable to the class members who own condominiums.

The Court finds that the factual variation between condominium owners and homeowners does not place the interests of the homeowners in significant jeopardy. *See In re Terazosin,* 220 F.R.D. at 686. Plaintiffs, who would prefer to keep homeowners within the class, have an incentive to aggressively pursue the interests of the homeowners. If the homeowners do not have a valid claim, then homeowners have no interests to be placed in jeopardy. In addition, Plaintiffs are willing to craft a subclass of condominium owners in the event that homeowners do not have a valid claim for failure to include due dates on the claims of lien. Moreover, the factual distinction between homeowners and condominium owners is irrelevant to Plaintiffs' claim that Defendants attempted to collect a debt that is not legitimate in violation of the FCCPA. Therefore, the Court finds that Plaintiffs have satisfied the typicality requirement.

4. Adequacy of Representation

█ The final Rule 23(a) requirement is that the plaintiff will fairly and adequately protect the interests of the class.

> Because all members of the class are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.

*Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir.2000) (internal citations omitted). Thus, the purpose of the adequacy requirement is to discover any "conflicts of interest between named parties and the class they seek to represent" and any competency or conflicts issues with class counsel. *Amchem Prods., Inc.,* 521 U.S. at 625, 627, 117 S.Ct. 2231. Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class mem-

bers." *Id.* at 625–26, 117 S.Ct. 2231 (citations omitted).

■ Defendants argue that Mr. and Mrs. Agan have a conflict of interest preventing them from serving as class representatives because they are also involved in a state foreclosure action against their Condominium Association. They argue that the foreclosure action is an issue in the class action and will be even more of an issue if the Agans lose their foreclosure action. Defendants also question Plaintiffs' attorney Mr. Blane Carneal's ability to serve as class counsel because he may be required to testify as to matters relating to the foreclosure suit.

However, the Court finds that the state foreclosure action is a separate and distinct proceeding. The Court has already found the FDCPA and state foreclosure actions raise different legal and factual issues and are governed by different bodies of law. *Agan v. Katzman & Korr, P.A.*, 2004 WL 555257, *2, 2004 U.S. Dist. LEXIS 4158, *5 (S.D.Fla. Mar. 16, 2004). The Court finds no evidence that the Agans will be less likely to pursue this class action if they are not successful in their foreclosure action. Rather, the Agans, and Ms. Spies, have provided declarations stating that they understand their responsibility as class representatives and are willing to undertake the responsibility. In addition, Mr. Carneal and Mr. Bragg offer extensive experience in class actions and consumer protection cases and Defendants do not question their abilities.

Defendants also request ninety days to conduct written discovery and depositions of the putative class members. Defendants had ample time to conduct discovery on class certification issues, and Defendants do not allege that Plaintiffs were not forthcoming with Defendants' discovery requests. Therefore, the Court finds Defendants' request for an additional ninety days without merit.

Thus, this Court finds that Plaintiffs have established the adequacy of representation requirement.

### B. *Rule 23(b) Requirements*

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b). *Amchem Prods. Inc.*, 521 U.S. at 614, 117 S.Ct. 2231. Plaintiffs seek to satisfy this requirement in one of three ways: under subsection 23(b)(3), subsection 23(b)(2) or through a hybrid of subsection 23(b)(2) and 23(b)(3).

Parties seeking class certification under Rule 23(b)(3) must show that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members" and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ The inquiry into whether common questions predominate over individual questions is generally focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown*, 212 F.R.D. at 606. "Not all questions of law or fact need be in common. The existence of a few individual questions will not negate the predominance of common issues." *Id.* Parties seeking class certification may satisfy the predominance element by showing that all class members' claims were derived from the same letter. *Fuller*, 197 F.R.D. at 701 (stating "[t]he essential factual link between all prospective class members is the letters sent by defendants"); *Macarz*, 193 F.R.D. at 54 (stating predominance was "easily met" when "all class members' claims arise from a common nucleus of facts, or more precisely, a common document").

■ The inquiry into whether the class action is the superior method for a particular case focuses on "increased efficiency." *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir.2002). Class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin*, 220 F.R.D. at 700 (internal citations omitted); *Amchem Prods. Inc.*, 521 U.S. at 615, 117 S.Ct. 2231 (stating the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual

to bring a solo action prosecuting his or her rights").

In addition, Rule 23(b)(3) provides a "non-exhaustive list of factors" pertinent to analyzing whether the party satisfied the predominance and superiority requirements:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

*Amchem Prods. Inc.*, 521 U.S. at 615, 117 S.Ct. 2231 (quoting Rule 23(b)(3)).

Parties seeking class certification under Rule 23(b)(2) must show that the opposing party has "acted or refused to act on grounds generally applicable to the class." Fed. R.Civ.P. 23(b)(2). "Subsection (b)(2) was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir.1983).

 Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Swanson*, 186 F.R.D. at 669 (quoting the advisory committee notes to Rule 23(b)(2)). "Monetary relief predominates unless it is incidental to requested injunctive or declaratory relief. Incidental means that the monetary damages flow directly from liability to the class as a whole on the claims forming the basis of injunctive or declaratory relief." *Id.*

 Parties may seek class certification under a hybrid of both Subsection 23(b)(2) and Subsection 23(b)(3). "A hybrid Rule 23(b)(2) class action is one in which class members seek individual monetary re-

lief, typically back pay, in addition to class-wide injunctive or declaratory relief." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir.1986). The hybrid is litigated in a two-part process; first is the liability determination stage and second is the monetary relief stage. *Simon v. World Omni Leasing*, 146 F.R.D. 197, 203 (S.D.Ala.1992). If the provisions are adequate or if a determination is made in favor of defendants at stage one, then the court need not proceed to stage two. *Id.*

 Plaintiffs contend that monetary relief under Rule 23(b)(3) is appropriate for this class action because of the common factual and legal questions presented by sending form letters and claims of lien in violation of the FDCPA and FCCPA and because of the relatively small amount of recovery for each plaintiff in this action.

Plaintiffs also argue that declaratory relief under Rule 23(b)(2) is appropriate for this class action because Defendants acted on grounds uniform to the class, sent the same letter or claim of lien to the entire class. Plaintiffs seek to declare illegal the over-statement of costs and attorneys' fees by Defendants in the form letters and claims of lien. Because Plaintiffs seek both monetary and declaratory relief, Plaintiffs argue that a hybrid class action would be the best form for this class action.

The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that monetary damages are appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually. *See Fuller*, 197 F.R.D. at 700–01. Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA and the FCCPA because successful plaintiffs are only awarded a maximum of $1,000.[3] 15 U.S.C. §§ 1692k(a)(2)(B), 1692k(a)(3).

---

**3.** Under the FDCPA, the named plaintiffs of a class action may recover up to $1,000 in damages, costs, and reasonable attorneys' fees and the class may recover up to $500,000 or 1% of the net worth of the defendant, whichever is less. 15 U.S.C. §§ 1692k(a)(2)(B), 1692k(a)(3). Under

The Court finds that the appropriate relief in this cause of action predominantly relates to money damages. *See Swanson,* 186 F.R.D. at 669. The FDCPA and the FCCPA specifically provide for money damages as the appropriate relief. 15 U.S.C. §§ 1692k(a)(2)(B), 1692k(a)(3); *Fuller,* 197 F.R.D. at 700–01. Moreover, the Court finds that declaratory relief is not merely incidental to monetary damages, but rather predominates a cause of action under the FDCPA and FCCPA. Because the Court declines to certify the class action under Rule 23(b)(2), the Court also denies Plaintiffs' request for a hybrid class action. Thus, the class is certified under Rule 23(b)(3).

## III. CONCLUSION

Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Class Certification [DE–38] is hereby **GRANTED**.

2. The Court hereby certifies a class pursuant to Fed.R.Civ.P. 23(b)(3) consisting of:

 a. all persons to whom Defendants sent letters or claims of lien, similar to the ones received by Plaintiffs;

 b. in an attempt to collect a debt incurred for a residential property assessment;

 c. which were not returned undelivered by the U.S. Post Office.

3. The Court certifies two subclasses:

 a. Subclass A shall consist of all persons to whom Defendants sent letters or claims of lien, similar to the ones received by Plaintiffs, during the one year period prior to December 2, 2003.

 b. Subclass B shall consist of all persons to whom Defendants sent letters or claims of lien, similar to the ones received by Plaintiffs, during the two year period prior to December 2, 2003.

4. Ramsey Agan, Grace Agan and Sherry Ann Spies are hereby certified as Class Representatives.

5. O. Randolph Bragg and F. Blaine Carneal are hereby certified as Class Counsel.

6. Defendants' Motion to Present Oral Argument [DE–59] is hereby **DENIED**.

the FCCPA, each named plaintiff of a class action may be awarded an additional $1,000 in damages and the class may be awarded an additional aggregate amount of $500,000 or 1 percent of defendants' net worth, whichever is less, but not to exceed $1,000 for each individual class member. Fla. Stat. § 559.77(2).