Willie Bell JONES, Plaintiff,

v.

Jennifer L. ROY, et al., Defendants.

No. CIV.A.99–D–925–N.

United States District Court,
M.D. Alabama,
Northern Division.

April 24, 2001.

Order denying motion to Alter
or Amend, Aug. 15, 2001.

Dennis G. Pantazis, Brian M. Clark, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Plaintiff.

Jennifer L. Roy, Spring Hill, FL; George W. Walker III, Copeland, Franco, Screws & Gill, Montgomery, AL; Barry J. Armstrong, Constance A. Walters, Jeremy M. Moeser,

Long, Aldridge & Norman, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff Willie Bell Jones's [1] Motion For Class Certification, filed November 15, 2000. Defendant Olsten Health Services [2] filed a Response December 4, and Plaintiff issued a Reply December 11. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion is due to be denied.

## I. STANDARD OF REVIEW

Class certification is a procedural question separate from the merits of the case. A court may not certify a class unless it is satisfied that the plaintiffs have met the requirements of Rule 23 of the *Federal Rules of Civil Procedure. See Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984).

## II. FACTUAL BACKGROUND

Plaintiff seeks to assert a class action under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff sues Olsten and its attorney, Jennifer L. Roy,[3] and proposes the following class:

> [A]ll persons that Olsten and/or Roy have attempted to collect debts from that were not given proper notification and disclosures pursuant to 15 U.S.C. § 1692g enumerated above, and that were the target of misleading communications enumerated herein and prohibited by 15 U.S.C. § 1692e, in an attempt to collect debt.

From that original large class, Plaintiff asks the court to certify two subclasses:

1. All persons who received a letter from Olsten Health Services/Gentiva [4] that referenced the "Corporate Collection Center" between August 26, 1998 and present.

1. "Plaintiff" or "Jones."

2. "Defendant" or "Olsten."

3. "Roy."

4. Olsten underwent a corporate reorganization in March of 2000 and subsequently changed its name to Gentiva Health Services. (Resp. at 9.)

2. All persons who received a copy of a letter from Jennifer L. Roy substantially similar in form, the exception being the name of the debtor and his or her address, and the amount owing, as the letters attached [to Plaintiff's Memorandum] as Exhibits A and B between August 26, 1998 and the present.

### A. Facts Surrounding the Roy Subclass

In March 1997, Olsten provided Plaintiff with home healthcare services. Due to confusion as to the amount Plaintiff's insurance carrier was to pay on the bill, Olsten sent Plaintiff a letter in September 1998 stating that he had an outstanding balance for the services performed in the amount of $1,252.38. Plaintiff tried to clear up the matter but was unsuccessful.

On December 11, 1998, Plaintiff received a letter from Jennifer L. Roy regarding the debt. In its entirety, the letter provides:

Dear Mr. Jones:

This letter is to advise you that I represent Olsten Health Services (formerly Olsten Kimberly Quality Care). I have been retained to assist with the collection of monies due on your account with Olsten. Currently, the balance due and owing is $1,252.38.

After reviewing your account it has been determined that your insurance carrier has not paid all claims as anticipated. I am currently working with your insurance carrier to resolve this situation. Please be aware that should your carrier not pay the outstanding claims or not pay them in full, you may be responsible for any unpaid amounts.

If I am unable to resolve this matter with your insurance company within thirty (30) days, Olsten has instructed me to collect the balance of your account from you if you are in fact responsible. In that regard, if you have any information that will help facilitate the payment of the outstanding charges, I urge you to contact either me or your insurance carrier as soon as possible. The is an attempt to collect a debt and any

information obtained will be used for that purpose.

Sincerely,

/s/ Jennifer L. Roy

Plaintiff erroneously contends that the letter he received is "exactly the same" as another letter sent to other debtors on behalf of Olsten. The letters are different in two respects. First, the last sentence of the second paragraph of the letter sent to debtors other than Plaintiff provides that "should your carrier not pay the outstanding claims or not pay them in full you *will be responsible* for any unpaid amounts." (emphasis added). Second, the letter Plaintiff received says he will be charged for the unpaid bill only "if you are in fact responsible" for it. The other letters do not have this limitation.

Between August 26, 1998 and the present, Roy sent letters to different parts of the country. Letters with the "will" language went to 15 patients, but only 12 of them actually received it. Letters with the "may" language, such as the letter Plaintiff received, went to 33 persons, but only 21 persons received it. Combining the 12 recipients of the "will" letter with the 21 recipients of the "may letter," Plaintiff seeks to certify a subclass of the 33 individuals.[5]

### B. Facts Surrounding the Olsten/Gentiva Subclass

Plaintiff also seeks to certify a class of "literally thousands" of individuals who received letters directly from Olsten containing a reference to "Corporate Collection Center" in the letterhead. Olsten sent four or five different versions of letters advising clients of the status of their account. Plaintiff admits that he never received such a letter from Olsten. Nevertheless, he contends that he can adequately represent a class alleging such letters violate 15 U.S.C. § 1692(e)(14), which prohibits any business, company, or organization from using any name other than the true name of debt collection business, company or organization to collect a debt. This is because Plaintiff, too, received a letter, albeit not from Olsten, with the name

---

**5.** The letterhead on both letters reads:

JENNIFER L. ROY
Attorney at Law
c/o Corporate Collection Center
P.O. Box 270700
Tampa, Florida 33688

"Corporate Collection Center" in the letter-head.

## III. DISCUSSION

■■■ A court will certify a class only if the court determines "after a rigorous analysis, that the prerequisites of Rule 23(a) are satisfied." *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). When a party seeks to certify various subclasses, each proposed subclass "must independently satisfy class action criteria." 1 NEWBERG ON CLASS ACTIONS § 3.09 (3d ed.1992). The Rule 23(a) prerequisites are often referred to as numerosity, commonality, typicality, and adequacy of representation. *See* FED. R. CIV. P. 23(a). If a representative fails to establish any single requirement, then the case may not proceed as a class action. *See Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 520 (M.D.Ala. 1992). Thus, if the 23(a) prerequisites are not satisfied, the court need not determine whether the class properly falls under any of the three categories enumerated in Rule 23(b) of the *Federal Rules of Civil Procedure.* For the following reasons, the court finds that Plaintiff's Motion is due to be denied.

### A. *Typicality*

■■■ Under Rule 23(a)(3), a plaintiff seeking to represent a class must present claims typical of that class. There must be a connection between the class representative's claims or defenses and the common questions that link the class. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). Plaintiff seeks to satisfy the typicality requirement by demonstrating that his claims are based on violations of the FDCPA, namely that all the letters violated the FDCPA by referring to a non-existent entity, and by failing to provide the proper validation information. The court is unpersuaded, and finds that Plaintiff's claims differ from those of the proposed class.

In *Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421 (E.D.La.1997), the plaintiff's class action complaint alleged violations of the FDCPA and state consumer law. The named plaintiff's claims were based on five letters sent to her by the defendant. She sought to certify a class of all class members to whom one of five different letters had been mailed. The court indicated that, giving the Rule 23 commonality requirement its broadest interpretation, the "common issue" of whether the multiple letters sent violated the FDCPA would satisfy the commonality requirement. Yet, the court found that the evidence failed to satisfy the typicality requirement because the letters differed substantively and the proposed class members had not received all five letters. *See id.* at 424–25. Thus, the court denied the plaintiff's motion for class certification.

Similarly, in the instant case, although Plaintiff characterizes the letters involved as differing only with regard to the addressee and the amount owed, there are clear substantive differences between the two letters sent by Roy. Plaintiff received a letter which is identical to that received by only 20 of the "thousands" of members he seeks to represent. Plaintiff never received a letter from Olsten and has no idea as to the content of the letters from Olsten. In light of the substantive variations in the letters, the fact that the class members within each subclass received different letters, and the fact that Plaintiff received a single letter substantively identical to only 20 of the proposed class members, the court finds that Plaintiff's claims are atypical of the class. *See id.* at 424–25.

### B. *Adequacy of Representation*

■■■ Rule 23(a)(4) requires the proposed class representative to demonstrate that he can fairly and adequately protect the interests of the class members. Because the class action device "holds the potential of binding class members who have no actual knowledge of the suit, the requirements of due process, as well as the necessity for confidence in the judicial process, demands assurance that representative parties can be counted upon to faithfully defend the interests of all members of the class." *duPont v. Wyly*, 61 F.R.D. 615, 621 (D.Del.1973). In sum, the Rule 23 requirements are not merely procedural niceties; they serve to protect the essential values of due process and the fundamental principles of our jurisprudence.

■■■ In order to satisfy the requirement of Rule 23(a)(4), a "class representative must

be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). If the proposed class representative is not a member of the class he claims to represent, then representation is "clearly inadequate." *Hackett v. Kincade,* 36 F.R.D. 442, 444 (N.D.Miss.1964) (denying certification when class representative and putative class members were not injured by same acts).

The named plaintiff desires strongly to represent a class of people that received different letters than the one he received himself. This desire may be laudable, but it is insufficient to make Plaintiff an adequate representative. Of the thousands of people who make up Plaintiff's proposed class, only 20 received the same letter as Plaintiff. To certify this class would give new meaning to the phrase "blind faith." In this situation, the potential for conflict of interest is all too palpable. The named plaintiff may have an easier time proving his case, using his letter, than he will have proving the case arising from the other demand letter. He may pour more of his efforts into the letter forwarded to him than he will into the letters sent to others. It is not enough to say that the class's attorneys are collecting based on the size of the class and, as a result, "the bigger the class, the bigger the take." From the named Plaintiff's view, the take is what will be taken from proving that Roy's letter to him personally violated the FDCPA. He has nothing further to profit by proving the letters sent from Olsten and the second letter from Roy were also in violation of the FDCPA. Therefore, the court finds that Plaintiff is an inadequate class representative. Accordingly, the court finds that Plaintiff's Motion For Class Certification is due to be denied.

## IV. ORDER

It is CONSIDERED and ORDERED that Plaintiff's Motion For Class Certification be and the same is hereby DENIED.

6. "Plaintiff" or "Jones."

Before the court is Plaintiff Willie Bell Jones's [6] Motion To Alter, Amend Or Vacate the court's April 24, 2001 Memorandum Opinion And Order, wherein the court denied Plaintiff's Motion For Class Certification. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion is due to be denied.

## I. DISCUSSION

Plaintiff's brief, which was filed May 8, raises four arguments that the court addresses below.

### A. *Plaintiff's Arguments Fail*

*The scheduling order.* First, Plaintiff argues that the proposed class should be certified as to Defendant Roy because Roy failed to oppose Defendant's Motion For Class Certification. Such failure, Plaintiff contends, amounts to consent to the Motion For Class Certification, pursuant to the Uniform Scheduling Order entered in this case last summer. The court disagrees.

Although the Uniform Scheduling Order states that failure to file a response to a motion indicates that there is no opposition to the motion, the moving party bears the burden of satisfying the court that all of the Rule 23 prerequisites have been met. If the court is not satisfied, then certification is unconscionable, regardless of whether the non-movant opposed the motion. *See Gilchrist,* 733 F.2d at 1556. Put another way, the Uniform Scheduling Order must be read consistently with the Due Process Clause. A class action binds the entire class forever. As such, Rule 23 protects procedural and substantive due process rights, and class counsel cannot assume unto himself the rights of others merely because he feels like it. *See Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

*The discovery sanctions.* Second, Plaintiff argues that denial of class certification will, essentially, reward Olsten for supposed abuse of the discovery process. This argument is without merit.

At the outset, the court will address Plaintiff's contention that this court "agreed" with Magistrate Judge Charles S. Coody that Olsten engaged in "legal gamesmanship." Plaintiff reaches this result by observing that the court overruled Olsten's objection to the magistrate judge's imposition of sanctions for failure to produce various documents during discovery. Plaintiff reads too much into the court's finding.

■ A district court reviewing a magistrate judge's orders modifies or sets aside only those portions of orders "found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); *Rowlin v. Alabama DPS*, 200 F.R.D. 459, 460 (M.D.Ala.2001). In this case, despite Plaintiff's misreading of the court's order, the court never found that Olsten acted in bad faith or was guilty of "legal gamesmanship." Such a finding is not necessary for the imposition of sanctions under Rule 37, which is enforced through Local Rule 26.1 and Federal Rule 16. *See Stallworth v. E–Z Serve Conv. Stores*, 199 F.R.D. 366, 368–69 (M.D.Ala.2001).

The court upheld Judge Coody's order because "Olsten did not take affirmative steps to stay discovery." After all, it was this failure to stay that primarily drew Judge Coody's ire in the first instance. The court's order states:

> Upon consideration of [Judge Coody's] reasons, and because Olsten did not take affirmative steps to stay discovery, and indeed was the reason that the court delayed in ruling upon the Motion For Class Certification, the court overrules Olsten's objection to the magistrate's imposition of sanctions.

Plainly, the court agreed that the imposition of sanctions was not "clearly erroneous." Equally plainly, the court did not "agree" that Olsten engaged in "legal gamesmanship."

■ That being said, the court will now address the merits of Plaintiff's argument. Since November 7, 2000, Plaintiff has known that the letters from Olsten would be pertinent to his case. Nevertheless, Plaintiff waited some four months from filing his initial document request to file his motion to compel. Plaintiff, who is represented by one of the largest law firms in Alabama, bears some responsibility for the prosecution of his claims. *See Strickland v. Wayne Farms–Southland Hatchery*, 132 F.Supp.2d 1331, 1332 (M.D.Ala.2001). If it was obvious that Olsten was giving what Plaintiff dubs "merely boilerplate objections" to material which was clearly relevant and discoverable, then Plaintiff should not have waited four months to compel Olsten to produce the material. Just as the court should not reward "legal gamesmanship," neither should the court encourage parties to sleep on their rights. *See Cash v. State Farm Fire & Cas. Co.*, 125 F.Supp.2d 474, 476–77 (M.D.Ala.2000).

The law of comparative negligence teaches that ambiguously harmful acts are properly deterred by reducing a plaintiff's recovery rather than barring it. Even assuming that Olsten was partially responsible for the nonproduction of the documents, Plaintiff should have taken affirmative steps to obtain the documents himself, rather than wait until the eleventh hour. Against this backdrop, and for many reasons not chronicled here, the magistrate judge's modest sanctions were fair and reasonable, but the relief Plaintiff requests would amount to a windfall borne from Plaintiff's own negligence.

*The separate letters.* Plaintiff also contends that the difference between the Olsten letters and Roy letters is not related to Plaintiff's claims because Plaintiff alleges that all the letters violated the same provisions of the FDCPA. Plaintiff erroneously claims that the "distinction in each such letter is the name of the debtor, the debtor's address, and the amount owed."

There is obvious tension in that Plaintiff, on the one hand, claims to have knowledge about the substantive contents of the letters while he admits, on the other hand, that he has not received any of the letters. Furthermore, the court has previously informed Plaintiff that his letter differs in at least two respects from the letter received by the other 12 members of the Roy subclass.[7] Plaintiff's letter indicated that he "may" be required to pay the amount not covered by

---

7. Counsel's apparent inability to read the court's orders raises serious questions about counsel's ability to bind thousands of citizens in a class action.

insurance "if [Plaintiff] is in fact responsible." The letter received by the other 12 members of the Roy subclass simply states that the recipient "will" be responsible.

 Further, the court again rejects Plaintiff's argument that the differences in the content of the letters is irrelevant to the court's class certification analysis. The court, of course, does not look to the substantive letters in order to determine the merits of the case. However, the court has a duty to consider all evidence bearing on the propriety of class certification. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir.2001); *McCree v. Sam's Club*, 159 F.R.D. 572, 575 (M.D.Ala.1995). Courts that have certified FDCPA class actions have routinely done so because the plaintiff and all of the class members received the same form letter alleged to have violated the same provision of the FDCPA. *See, e.g., Keele v. Wexler*, 149 F.3d 589 (7th Cir.1998) (holding that typicality requirement was satisfied where defendant mailed same form letter to all class members); *Talbott v. GC Serv. Ltd. P'ship*, 191 F.R.D. 99 (W.D.Va.2000) (certifying class because plaintiff and all proposed class members received the same letter, and distinguishing plaintiff's case from *Byes, supra*, which involved five different letters and all of the class members did not receive all five letters); *Vines v. Sands*, 188 F.R.D. 302 (N.D.Ill.1999) (finding certification appropriate because each class member in the proposed class received the same letter); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347 (N.D.Ill.1998) (same); *D'Alauro v. GC Serv. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y.1996) (certifying class action where all proposed class members received each of the two identical letters); *Carr v. Trans Union Corp.*, 1995 WL 20865 (E.D.Pa.1995) (certifying class action where only one form letter was sent to all proposed class members); *Vaughn v. CSC Credit Serv., Inc.*, 1994 WL 449247 (N.D.Ill.1994) (certifying class of all persons who received one particular form letter). The court reaffirms its finding that Plaintiff's claims are atypical of the class. Therefore, class certification would offend Rule 23 and the requirements of due process. *See Byes*, 173 F.R.D. at 421–25.

 *The Olsten subclass.* Plaintiff's final argument is that the court erred in finding that Plaintiff's failure to receive a letter from Olsten means he is not part of the Olsten subclass. Plaintiff contends that he received a letter from Roy, who is Olsten's counsel, and that a letter from Olsten's counsel is deemed a letter from the party. The fact that Plaintiff never received a letter from Olsten has been an issue since Plaintiff filed his Motion For Class Certification. He could have raised this argument at any time. Thus, the court will not address the newly-minted "lawyer-agent" argument, which was not raised until this instant Motion To Reconsider. *See Hashwani v. Barbar*, 822 F.2d 1038, 1041 (11th Cir.1987); *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir.1985). In any event, even assuming that Plaintiff's letter is effectively from Olsten, this does not negate the fact that Plaintiff is an inadequate representative. He never received any of the other letters sent from Olsten. He cannot expect to bind those who did. *See Byes, supra.*

### B. *Plaintiff's Proposed 21–Member Subclass Does Not Meet Rule 23's Requirements*

 Plaintiff also asks the court to certify a class of persons who received the same Roy letter that he received. This proposed class would have exactly 21 members. The court declines to certify such a tiny class.

 The Eleventh Circuit has recognized with regard to numerosity that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986). Thus, Plaintiff's proposed class of no more than 21 individuals rests precisely on the line for presumed inadequacy. The court looks at the size of the class and also considers whether joinder is impracticable. In determining if joinder is impracticable, the court looks at factors including geographic diversity, *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859 (11th Cir. 1986), judicial economy, *Philadelphia Elec.*

*Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968), and the ease of identifying the members of the class and determining their addresses, *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir.1981).[8]

After considering the totality of the circumstances, the court finds that the proposed class does not meet the requirements of Rule 23(a)(1). First, Defendant Roy has indicated that she has records which provide the names and addresses of the other 20 recipients. Thus, the other 20 recipients may be identified and located. The court finds that Plaintiff has not discharged his burden of showing that these individuals cannot be joined without inconvenience or difficulty.

In *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980), the former Fifth Circuit recognized that the core of the numerosity requirement is "practicability of joinder, not number of interested persons per se." *Id.* at 267. "Practicability of joinder depends on the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined, and their geographic dispersion." *Id.* Plaintiff cannot rely on speculation to discharge his burden. *See McCree*, 159 F.R.D. at 576–77; 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1762 at 164 (2d ed.1986).

Plaintiff's evidence consists of Roy's testimony that she does not know precisely where she sent the debt collection letters, but that she "thinks it's safe to assume" that they went to different parts of the country. But where precisely? Florida? Mississippi? Washington? Maine? New Jersey? And, assuming some letters went elsewhere, then how many? From this sparse factual record, any answers to these questions would be wholly speculative, and supported only by vague, conclusory assertions. The court simply is not satisfied that Plaintiff would have any difficulty, much less any substantial difficulty, identifying and joining potential class members. Therefore, the court cannot find that joinder is impracticable. *See McCree, supra*; FED. R. CIV. P. 23(a)(1).

The court also weighs the fact that class actions impose added burdens upon the judiciary, which must constantly scrutinize the proceedings and insure that the absent members are receiving everything to which they are entitled. When a court looks at certification motions in the context of a 21– to 40–member class, one factor to consider is how close the proposed class is to the number 21. The court takes judicial notice that civil actions involving as many as 30 plaintiffs have been prosecuted in this District without a hitch.[9] The court finds that joinder is preferable to the class device in this case. A class action is not the superior way for this case to proceed. *See Cox*, 784 F.2d at 1553; *Garcia*, 618 F.2d at 267.

## II. ORDER

For these and other reasons, it is CONSIDERED and ORDERED that Plaintiff's Motion To Alter, Amend Or Vacate be and the same is hereby DENIED.

---

8. The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

9. *See, e.g., Ector et al. v. East Ala. Lumber*, 00–D–1231–E (filed Sept. 8, 2000) (involving 30 named plaintiffs; 29 from Ohio and one from Nevada).