Angela SANCHEZ–KNUTSON, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

CASE NO. 14–61344–CIV– DIMITROULEAS

United States District Court, S.D. Florida.

Signed October 6, 2015

Entered October 7, 2015

Jordan Matthew Lewis, Michael Aaron Hersh, John Joseph Uustal, Kelley Uustal, PLC, Ft. Lauderdale, FL, for Plaintiff.

Janet Conigliaro, Dykema, Detroit, MI, Jeffrey Yeatman, Joel A. Dewey, DLA Piper LLP (US), Baltimore, MD, Edward Colin Thompson, J. Trumon Phillips, DLA Piper LLP (US), Tampa, FL, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

WILLIAM P. DIMITROULEAS, United States District Judge

THIS CAUSE is before the Court upon Plaintiff Angela Sanchez–Knutson ("Plaintiff"

or "Sanchez–Knutson")'s Renewed Motion for Class Certification [DE 96]. The Court has considered the Motion [DE 96], Defendant Ford Motor Company ("Defendant" or "Ford")'s Response [DE 104], Plaintiff's Reply [DE 114], Defendant's Sur–Reply [DE 125], the evidence submitted in the record, arguments by counsel at the September 24, 2015 hearing, and is otherwise fully advised in the premises.

## I. BACKGROUND

This action arises out Defendant Ford's sale of Ford Explorer model vehicles with an allegedly dangerous and defective condition that allows the exhaust and other gases to enter the passenger compartment of the vehicle during normal use.

On or about June 9, 2014, Plaintiff Angela Sanchez–Knutson filed her original Complaint in this action [DE 1], followed soon after by a Motion to Certify Class [DE 5]. The Court denied without prejudice the first Motion to Certify as premature, allowing Plaintiff to refile a class certification motion at a later stage in the litigation. *See* [DE 20]. On October 7, 2014, the Court entered an Order Denying Ford's Motion to Dismiss, and ordered Defendant to answer the Complaint. *See* [DE 33]. However, pursuant to a joint stipulation between the parties, Plaintiff filed a First Amended Complaint on October 16, 2014. On October 31, 2014, the Court entered an Order Denying Defendant's Motion to Dismiss the First Amended Class Action Complaint, standing by its rulings in its October 7, 2014 Order. *See* [DE 37]. On November 14, 2014, Defendant filed its Answer and Affirmative Defenses to the First Amended Class Action Complaint. [DE 44].

On March 26, 2015, the parties stipulated to allowing Plaintiff to file a Second Amended Class Action Complaint, which she filed on March 30, 2015. [DE's 69, 85]. On July 22, 2015, the Court entered an Order Granting in Part and Denying in Part Motion to Dismiss the Second Amended Class Action Complaint. [DE 110]. Accordingly, the Second Amended Class Action Complaint [DE 85] is the operative complaint in this action, subject to the Court's July 22, 2015 dismissals of Plaintiff's nationwide Magnuson–Moss claims and Plaintiff's claims regarding her proposed Florida All Model Class. Defendant filed its Answer and Defenses to the Second Amended Class Action Complaint on August 5, 2015. [DE 113].

Thus, the following claims remain at issue in the present litigation: (1) Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"); (2) Breach of Express Warranty, Fla. Stat. § 672.313; and (3) Breach of Implied Warranty, Fla. Stat. § 672.313.

Plaintiff alleges that the new 2013 Ford Explorer she purchased from an authorized Ford dealership in Gainesville, Florida was dangerous and defective at the time she purchased it because its design and exhaust and/or HVAC systems permitted an exhaust odor, exhaust and other gases, including carbon monoxide ("CO"), to enter the passenger compartment of the vehicle. She alleges that this defect is latent in nature because it is not obvious or ascertainable upon reasonable examination or inspection. Plaintiff alleges that she and the members of the proposed class reasonably expect to operate their Ford Explorers during its normal and customary use free from exposure to lethal quantities of carbon monoxide and other potentially dangerous gases.

Plaintiff alleges that Ford knew about this defect but failed to disclose this defect to Plaintiff and other members of the putative class. Plaintiff also alleges that Ford has failed to effectively fix the defects that permit exhaust and other gases, including CO, to enter the passenger compartment of the subject vehicles, nor has it covered the expenses associated with correcting the defect.

Plaintiff proposes a putative class in this case, consisting of:

All persons who purchased or leased in Florida at least one of the following vehicles: 2011 Ford Explorer, 2012 Ford Explorer, 2013 Ford Explorer, 2014 Ford Explorer, and 2015 Ford Explorer.

## II. DISCUSSION

Parties seeking class action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly

referred to as numerosity, commonality, typicality and adequacy of representation. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Parties moving for class certification bear the burden of establishing each element of Rule 23(a). *London v. Wal–Mart Stores,* 340 F.3d 1246, 1253 (11th Cir.2003). If the party seeking class certification fails to demonstrate any requirement, the case may not continue as a class action. *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D.Ala.2001). Specifically, the four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b). *Amchem Prods.,* 521 U.S. at 614, 117 S.Ct. 2231. Here, Plaintiff asserts that class certification is appropriate pursuant to Rule 23(b)(2) and, alternatively, 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(3) is appropriate when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members," and when (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

▬ In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir.1992).

Although a district court is not to determine the merits of a case at the certification stage, sometimes " 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.' " *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1309 (11th Cir.2008) (quoting *General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984). The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend,* — U.S. —, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). That is, "a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.*

### A. Defendant's Objections to the Class Definition

▬ "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.' " *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679, 684 (S.D.Fla.2014). The court may address the adequacy of the class definition before analyzing whether the proposed class meets the Rule 23 requirements. *See e.g., Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262, 269 (S.D.Fla.2003) (addressing whether the class definition would require individualized determinations before addressing the Rule 23 requirements).

▬ The issue of ascertainability relates to whether the putative class can be identified: "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782,

787 (11th Cir.2014); *see Karhu v. Vital Pharmaceuticals, Inc.,* 2015 WL 3560722, *2–4 (11th Cir. Jun. 9, 2015) (affirming district court's denial of class certification on ascertainability grounds). This element requires that "identifying class members is a manageable process that does not require much, if any, individual inquiry." *Bussey,* 562 Fed. Appx. at 787. Class definitions that are overly broad, vague, or which would require administratively difficult individualized determinations should be denied. *Perez,* 218 F.R.D. at 269. A class must be defined in such a way that every member of the putative class would have standing to assert the relevant claims. *See Walewski v. Zenimax Media, Inc.,* 502 Fed.Appx. 857, 861 (11th Cir.2012) (affirming denial of class certification where proposed class definition "impermissibly includes members who have no cause of action"); *CC v. Sch. Bd. of Broward County,* 2014 WL 4771751, at *8 (S.D.Fla. Sept. 24, 2014) ("When the proposed class includes many members without claims, the court may deny certification.").

In this case, Defendant objects to the Plaintiff's class definition on the grounds that it would incorporate many potential class members who Defendant claims do not have standing. Specifically, Defendant contends that the class definition—tied to having owned or leased a 2011 to 2015 Ford Explorer—fails to require within the definition that the putative class member has experienced the alleged exhaust odor, have a valid warranty, has presented the vehicle for repair under the warranty, or that Ford was unable to correct the alleged condition. Nor is there any requirement in the proposed definition that the putative class member has been deceived or misled by Ford, or that the putative class member has suffered damages. Defendant also objects to the Plaintiff's class definition on the grounds that, to the extent that the class definition were to be revised (or interpreted) as to apply only to those putative class members with potential claims, the class would be unascertainable. Defen-

dant contends that Plaintiff has identified no method of identifying class members at all, much less differentiating putative class members with viable claims from those without such claims.[1]

■ Defendant's ascertainability argument rests primarily on Defendant's attempt to redefine the class to require class members to show that each member experienced, noticed, and reported to Ford the excessive exhaust contamination, within the warranty period, failed TSB fixes, exhausted Ford's internal BBB remedy, and so on. However, the Court finds that Plaintiff has provided sufficient direct evidence before this Court, at this stage in the litigation, to demonstrate that Plaintiff's Explorer may be found to share the same defect as all others in its product line. *See, e.g., Keegan v. American Honda Motor Co., Inc.*:

> The fact that some vehicles have not yet manifested premature or excessive tire wear is not sufficient, standing alone, to defeat commonality. It is undisputed that the rear suspension of the class vehicles was designed to have some degree of negative camber. Plaintiffs assert that this design choice was defective in that it caused class vehicles to exhibit a propensity for premature tire wear.

284 F.R.D. 504, 524 (C.D.Cal.2012). In this case, if a jury believes Plaintiff's evidence, it could find that the alleged defect was manifested when the Explorer came off the assembly line, regardless of whether the every putative class member has driven the vehicle in such a way that caused exhaust to enter the passenger cabin. *See Kia Motors America Corp. v. Butler,* 985 So.2d 1133, 1139 (Fla. 3rd DCA 2008). Thus, the defect would thus have manifested itself within the warranty period. *See Brisson v. Ford Motor Co.,* 349 Fed.Appx. 433, 434–35 (11th Cir.2009). Accordingly, Plaintiff's proposed class definition, subject to the stipulated modification that the class is limited to those persons who bought or leased their 2011–15 Explorers

---

1. Defendant also argues that the class is unascertainable because there is no limiting parameter as to time—that is, new class members are created with every subsequent sale and re-sale of the vehicles. Plaintiff concedes that the class should be limited to those persons who bought or leased their 2011–15 Explorers during the class period from authorized Ford dealers, and states that it will stipulate to that modification.

during the class period from authorized Ford dealers, aligns with Plaintiff's proffered evidence that her Explorer shares the same defect as all others in its product line, and results in a class that identifiable and would not require administratively difficult individualized determinations. Thus, the Court finds that the ascertainability element has been met.

### B. Rule 23(a)(1): Numerosity

There is no rigid standard for determining numerosity. The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D.Fla.2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D.Fla.2000). The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D.Ala.2005) (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir.2004)). While "mere allegations of numerosity are insufficient," Fed. R. Civ. P. 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D.Fla.2013). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

Here, the proposed class easily meets the numerosity requirement because, while the exact number of class members is unknown to Plaintiff, Ford admitted in its response to a request for admission that there are at least 40 persons who purchased 2011–2015 Ford Explorers in Florida. Additionally, Ford has produced a chart showing that 31,165 Ford Explorers, model years 2011 – 2015, were sold in Florida.[2] Thus, the Court finds that Plaintiff has satisfied the requirement of numerosity. Ford's opposition (not only as to numerosity, but also as to ascertainability, commonality, typicality, adequacy, and predominance) is premised on Ford reimagining Plaintiff's class definition (discussed *supra* in Section A).

### C. Rule 23(a)(2) Commonality and Rule 23(b)(3) Predominance [3]

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla.1996). To that end, the Supreme Court has held that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S.Ct. at 2551. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D.Fla.2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D.Fla. 2004); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D.Fla.1991). However, "a class action must involve issues that are susceptible to class-wide proof." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001)). That said, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litiga-

---

2. Even accounting for Ford's evidence that only 1% of owners of Ford Explorers bought in Florida ever sought repair of the exhaust odor condition, numerosity is still easily met, as that would still result in over three hundred defective Explorers.

3. Because there is considerable overlap between Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement, courts often address them together.

tion." *Dukes,* 131 S.Ct. at 2551 (quotation omitted). That is, commonality requires a common question capable of common resolution. *See, e.g., Manno,* 289 F.R.D. at 685. "Plaintiffs face a 'low hurdle' in bearing this 'light' burden, as commonality 'does not require that all questions of law and fact raised be common.' " *Alhassid v. Bank of America, N.A.,* 307 F.R.D. 684 (S.D.Fla.2015) (quoting *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1356 (11th Cir.2009); *Vega,* 564 F.3d at 1268).

▮ Though similar to the commonality issue, the predominance requirement is "far more demanding." *Cooper,* 390 F.3d at 722; *see also Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997). For Rule 23(b)(3) predominance, "it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1254 (11th Cir.2004). The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a classwide basis." *Brown v. SCI Funeral Servs. of Fla.,* 212 F.R.D. 602, 606 (S.D.Fla.2003). Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof. *Kerr v. City of W. Palm Beach,* 875 F.2d 1546, 1558 (11th Cir.1989). *See also Bussey,* 562 Fed.Appx. at 787 (reversing district court's class certification after finding that too much individual inquiry would be required to identify class members). To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action." *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1234 (11th Cir.2000).

▮ Here, with regard to the commonality element, the question of whether Defendant sold Ford Explorer model vehicles with an allegedly dangerous and defective condition that allows the exhaust and other gases to enter the passenger compartment of the vehicle during normal use is common to all putative class members. As this Court's observed in *Rosen* :

The critical issue of whether the OCS in 2007 Lexus ES 350s was defective is common to all putative class members. With the exception of the issue of reliance in the FDUTPA claims, this issue predominates over the individual issues.

*Rosen v. J.M. Auto Inc.,* 270 F.R.D. 675, 681–82 (S.D.Fla.2009) (granting motion to certify class). Defendant's reliance on *Cholakyan v. Mercedes–Benz USA, LLC,* 281 F.R.D. 534, 552 (C.D.Cal.2012) is misplaced, as in that case the court found that plaintiff failed to establish commonality because there was an absence of proof of a common defect. In contrast, Plaintiff in this action has presented the Court with substantial evidence demonstrating that the exhaust contamination is a systemic problem caused by a combination of design and manufacturing defects. Moreover, in this case, the resolution of the common question certainly has the capacity to generate common answers apt to drive the resolution of the classwide litigation. *See Dukes,* 131 S.Ct. at 2551. Accordingly, the Court finds that Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

▮ Regarding predominance, Plaintiff contends that the question of efficiency supports the motion for class certification. *See Amchem Prods.,* 521 U.S. at 615–16, 117 S.Ct. 2231. She asserts that if Plaintiff and every class member brought an individual action, each would attempt to prove the same facts to establish their case, and Ford would generally assert the same defenses. Defendant, on the other hand, argues that individual issues in this case predominate over common issues, precluding certification under Rule 23(b)(3).

▮ Regarding Plaintiff's FDUTPA claim, Defendant argues that differences in information possessed by putative class members precludes proof of a deceptive act without individual inquiry. Defendant points out that Explorer exhaust odor issues have been addressed on internet messaging boards since at least 2011, based on a review Plaintiff s own document production in this case, and that media reports have addressed it as well—including articles and a local news broadcast involving Plaintiff. Defendant's

argument is unavailing. "FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 Fed.Appx. 565, 567 (11th Cir.2009) (quotation omitted). This is the case whether a FDUTPA claim is brought by an individual consumer or as a class action. *See id.*

Defendant also argues that because there are numerous potential causes for odors in motor vehicles, individual inquiry by direct examination of each putative class vehicle will be necessary to satisfy the prima facie elements of the claims. For example, Defendant contends that, in Sanchez–Knutson's case, post-sale accident damage caused the allegedly dangerous condition in Plaintiff's Explorer. While it is likely that Ford's defense will attempt to convince the jury in this case that Plaintiff's vehicle was not purchased in a defective condition, and that Plaintiff's exhaust leak into the passenger cabin was caused by micro-fractures in her vehicle, it does not follow that each putative class vehicle will need to be examined. As the Court explained, *supra,* Plaintiff has submitted sufficient evidence for class certification purposes that the exhaust contamination in her Explorer is the result of a systemic problem caused by a combination of design and manufacturing defects. If the jury believes the evidence that Plaintiff's Explorer shares the same defect as all others in its product line, each class member's vehicle would not need to be examined. If the jury does not believe Plaintiff's evidence, then her claims fail, and, again, each class member's vehicle would not need to be examined.

Additionally, regarding damages, Defendant also argues that individual issues will predominate because Plaintiff cannot set forth a methodology for proving FDUTPA or warranty damages on a class-wide basis. The Supreme Court has explained that the predominance inquiry requires that the alleged damages emanating from the injury be "measurable on a class-wide basis through use of a common methodology." *Comcast,* 133 S.Ct. at 1430. Additionally, a purported damages model must fit the legal theory of the case. *Id.*; see also *Randolph,* 303 F.R.D. at 684. Defendant attacks Plaintiff's straight

arithmetic damages theory as well as her conjoint analysis damages model. The Court will address each, in turn.

Plaintiff's straight arithmetic damages model will simply deduct from the purchase or lease price of the car the cost of Ford's multiple repairs. This model is premised on the legal theory that class members have paid too much—either in purchase price or in lease payments—for a car that is uniquely susceptible to carbon monoxide contamination. Thus, at a minimum, the sales and lease price should be deducted by the cost-to-repair, which is the total cost of all of Ford's various proposed fixes: the work prescribed by the TSBs; the installation of the extended exhaust tips, and the recalibration of the car's HVAC system.

Defendant urges the Court to reject Plaintiff's straight arithmetic damages model, arguing that this damages model is contrary to law because it is nothing more than a backdoor attempt to recover vehicle repair costs, which constitute consequential damages and are unrecoverable under FDUPTA. *See Kia Motors,* 985 So.2d at 1140. Plaintiff contends that is not attempting to recover repair costs, but, instead, setting forth a theory to calculate actual damages, which are recoverable under FDUPTA, through a proxy for the amount of overpayment, *i.e.,* what amount of money would have theoretically made Plaintiff whole at the time of purchase or lease of a vehicle with the allegedly dangerous or defective condition. The Court agrees with Defendant that Plaintiff's straight arithmetic damages model is contrary to law as an attempt to recover vehicle repair costs, which are unrecoverable under FDUPTA. *See Kia Motors,* 985 So.2d at 1140 ("FDUPTA 'actual damages' do not include consequential damages, such as repair damages or resale damages, both of which are sought by Ms. Butler on behalf of the class in this case."). Accordingly, the Court rejects Plaintiff's straight arithmetic damages model.

Defendant also argues that the Court should reject Plaintiff's expert Steven P. Gaskin's proposed conjoint analysis damages model. To the extent that Defendant contends that conjoint analysis, an analytic

survey method used to measure customer preferences for specific features of products, is an improper damages theory post-*Comcast*, the Court rejects that position as unfounded. *See, e.g., Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, *4–14 (C.D.Cal. Jul. 24, 2014) (holding that plaintiff's expert's proposed—but not yet performed—conjoint analysis theory for calculating damages was not junk science, could be applied on a class-wide basis for predominance purposes under *Comcast*, and was consistent with plaintiff's theory of liability); *Khoday v. Symantec Corp.*, 2015 WL 1275323, *12 (D.Minn. March 19, 2015) ("The Court finds that Gaskin's conjoint analysis is generally a permissible method for calculating damages."); *In re ConAgra Foods, Inc.*, 2015 WL 1062756 (C.D.Cal. Feb. 23, 2015) (holding that plaintiff's expert's proposed conjoint analysis damages model satisfied *Comcast*, was tied to plaintiff's theory of liability, and met Rule 23(b)(3)'s predominance element). Additionally, the Court disagrees with Defendant that Mr. Gaskin, must have already performed his proposed conjoint analysis for the Court to consider the proffered methodology. *See, e.g., Guido*, 2014 WL 6603730 at *8 (rejecting defendant's argument that the plaintiff's expert's proposed conjoint analysis testimony should be inadmissible because plaintiff's expert had not yet performed the conjoint analysis in that case). Finally, Defendant's argument that Mr. Gaskin's proposed methodology turns a blind eye to significant differences in putative class members harkens back to Defendant's reimagining Plaintiff's class definition, discussed *supra*. The Court accepts Plaintiff's proffered expert's proposed conjoint analysis damages model for purposes of class certification, finding that it is sufficiently tied to Plaintiff's legal theory and her proffered evidence that her Explorer shares the same defect as all others in its product line, and meets the predominance requirement under the Supreme Court's holding in *Comcast*.

Based upon the foregoing, the Court finds that Plaintiff has satisfied Rule 23(b)(3)'s predominance element.

### D. Rule 23(a)(3): Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir.2001); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir.2000). A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001) (citing *Prado–Steiman*, 221 F.3d at 1279). Nonetheless, "the typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Alhassid*, 307 F.R.D. at 697 (citations omitted).

Here, Plaintiff's claims are typical in that proof of Plaintiff's claims that the exhaust contamination in her Explorer is the result of a systemic problem caused by a combination of design and manufacturing defects and that Plaintiff's Explorer shares the same defect as all others in its product line would prove the claims of the proposed class members. The majority of Defendant's arguments in opposition have been discussed and rejected by the Court in previous sections of this Order.

However, the Court will address Defendant's argument that Plaintiff's claims are not typical because there no evidence that the entire putative class has suffered personal injuries from exhaust and/or carbon monoxide exposure, as alleged by Plaintiff's complaint. The Court finds this argument unavailing for two reasons. First, Plaintiff's counsel has made it clear that Plaintiff does not intend to pursue any personal injury claims in this action, nor does she intend to file any separate or subsequent lawsuits claiming personal injuries against Ford from

exhaust and/or carbon monoxide exposure. Second, as the Court will discuss, *infra*, while Plaintiff has requested class action certification under Rule 23(b)(2) and, alternatively, 23(b)(3), the Court concludes that this action is appropriate for certification pursuant to Rule 23(b)(3) only. Unlike a Rule 23(b)(2) injunctive class, Rule 23(b)(3) has procedural provisions for notice and the right to opt out, protections which allow plaintiffs with potentially different or greater claims from the class (in this case, potential personal injury claims) to decide for themselves to go it alone, pursing their claims on an individual basis, rather than tying their fates to that of the class representatives. *See Dukes*, 564 U.S. 338, 131 S.Ct. 2541 at 2559, 180 L.Ed.2d 374.

Thus, the Court finds that Plaintiff has satisfied the requirement of typicality.

### E. Rule 23(a)(4): Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Group, Inc.*, 206 F.R.D. 514, 516 (M.D.Fla.2002); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987). Adequacy of representation is tied to both commonality and typicality. *Amchem Prods.*, 521 U.S. at 2251 n. 20, 117 S.Ct. 2231 (1997). As to the adequacy of counsel for the class representative, "[a]bsent specific proof to the contrary, the adequacy of class counsel is presumed." *In re Seitel, Inc. Securities*, 245 F.R.D. 263, 271 (S.D.Tex. 2007).

Here, Sanchez–Knutson has provided sufficient evidence that she is familiar with the facts in this case, understands her duties and fiduciary obligations as the proposed class representative, and is willing to discharge those duties in this suit. Additionally, she seeks no preferential treatment.

The Court also finds that Sanchez–Knutson's interests are not antagonistic to those of the class.

The Court has already analyzed and rejected Defendant's arguments in opposition to adequacy in previous sections of this Order. Ford's arguments are premised on its reimagined class definition and on its position that 99% of the putative class has suffered no injury at all. Defendant also again contends that Plaintiff is an inadequate class representative because she has abandoned her personal injury damages claims, despite alleging that she has such personal injuries from carbon monoxide exposure. As explained *supra*, Plaintiff has chosen not to pursue any personal injury claims she may have. To the extent that potential class members with to pursue personal injury actions against Ford from exhaust and/or carbon monoxide exposure, they will be able to do so through the procedural protections of Rule 23(b)(3). Defendant also again argues that Plaintiff is an inappropriate class representative because her claims are subject to unique defenses related to the rear-end collision that Plaintiff's vehicle was involved in over a year after purchase. Regardless of who the named plaintiff is, it is likely that Ford's defense will attempt to convince the jury that there are numerous potential causes for exhaust odors to be present in a vehicle, and that the named plaintiff's vehicle was not purchased in a defective condition. The Plaintiff has presented evidence that her car's exhaust problems commenced immediately after her purchase and that her Explorer may be found to share the same defect as all others in its product line. Ford's unique defense regarding the collision is not likely to significantly distract the fact-finder from the allegedly common issues so as to render Sanchez–Knutson an inadequate class representative.

Based upon the foregoing, the Court finds that Plaintiff has satisfied Rule 23(a)(4)'s adequacy of representation requirement.

### F. Rule 23(b)(3) Superiority

Rule 23(b)(3) has two requirements: that questions of common fact or law predominate over individual issues, and that class action

litigation is the superior method for fair and efficient adjudication of the claims. Fed. R. Civ. P. 23(b)(3). The predominance requirement was discussed above in section II.C, and the Court found that element to be met in this case.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3); *see also, De Leon–Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1220 (11th Cir.2007). "[T]he less common the issues, the less desirable a class action will be as a vehicle for resolving them." *Sacred Heart Health Systems, Inc. v. Humana*, 601 F.3d 1159, 1184 (11th Cir 2010).

 Here, the Court finds that a class action is a superior method of adjudication in this case. First, the number of class members here—in the hundreds or thousands—is too large for the prosecution of separate actions by each class member to be likely, practical, or desirable. Second, the Court is not aware, nor have the parties cited, any other litigation concerning this controversy by other class members. Third, this Court is fully capable of resolving this controversy, and notes that the Florida class is well-aligned with this forum. Finally, the Court does not see any reason that there will be particular manageability problems compared to any other Rule 23(b)(3) class action. The Court rejects Defendant's contentions that a need for individual analyses regarding knowledge, causation, and damages defeats any claimed superiority in class treatment, for the reasons discussed above.

## G. Rule 23(b)(2)

 Rule 23(b)(2) allows for a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Generally applicable" means the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity . . . [directed] to all members." *Leszczynski, et al. v. Allianz Insurance*, 176 F.R.D. 659, 673 (S.D.Fla.1997) (quoting 7A C. Wright, A. Miller, & M. Kane, Federal Practice, section 1775 at 449). Though the predominant relief must be injunctive or declaratory relief, monetary damages may also be sought in a Rule 23(b)(2) class action as incidental relief. *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir.2001). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Dukes*, 131 S.Ct. at 2557 (internal quotation marks omitted). Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* It is the Plaintiff's burden to "affirmatively demonstrate" that class certification is appropriate under Rule 23(b)(2). *Id.* at 2551.

 Here, Plaintiff argues that class certification under the 23(b)(2) subdivision is appropriate because she seeks an order from the Court that would require Ford disclose the defect and extend the vehicles' warranties to fix (if that is possible) the combination of design and manufacturing defects that causes the exhaust problem. The Court finds that the injunctive relief that Plaintiff requests is the equivalent of the judicial recall claim that Plaintiff withdrew at the motion to dismiss stage in order to avoid Ford's preemption and primary jurisdiction arguments. Having abandoned her claim for a judicial recall when faced with Ford's preemption and primary jurisdiction arguments, Plaintiff cannot resurrect a comparable remedy at this stage in order to seek a Rule 23(b)(2) certification. Accordingly, the Court

finds that certification of a Rule 23(b)(2) class in this action is not merited.

## H. Appointment of class counsel

Finally, Plaintiff requests that the Court appoint her attorneys Kelley Uustal as class counsel. Under Rule 23(g)(1), "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." In appointing class counsel, the court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A). Pursuant to Rule 23(g)(4), class counsel must fairly and adequately represent the interests of the class. Here, the Court has reviewed the submissions by Jordan M. Lewis, Esq., and the law firm Kelley Uustal, PLC, and determines that the proposed class counsel is adequate under Rule 23(g)(1) and (4).[4] Therefore, the Court appoints Jordan M. Lewis, Esq., and the law firm Kelley Uustal, PLC as counsel for the class.

## III. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Angela Sanchez–Knutson's Renewed Motion for Class Certification [DE 96] is hereby **GRANTED IN PART AND DENIED IN PART**.

2. Pursuant to Fed. R. Civ. P. 23(b)(3), the Court hereby **CERTIFIES** a Florida class, as follows: *All persons who purchased or leased in Florida during the class period from authorized Ford dealers at least one of the following vehicles: 2011 Ford Explorer, 2012 Ford Explorer, 2013 Ford Explorer, 2014 Ford Explorer, and 2015 Ford Explorer.*

3. Angela Sanchez–Knutson is designated as the class representative.

4. Jordan M. Lewis, Esq., and the law firm Kelley Uustal, PLC are designated as counsel for the class.

5. The parties shall jointly submit a class notice program reasonably calculated to apprise putative class members of the pending action, and a proposed form of notice, on or before October 20, 2015.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of October, 2015.

---

4. The Court notes that Defendant does not challenge the appointment of Jordan M. Lewis, Esq., and the law firm Kelley Uustal, PLC in the event a class is certified.